IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MUMIN RAHIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-551-SLR |
| | ) |
| DWIGHT HOLDEN, et al., | ) |
| | ) |
| Defendants. | ) |

Mumin Rahim, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: December 22, 2011
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Mumin Rahim ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit alleging violations of his constitutional right to due process. Plaintiff proceeds pro se and was granted leave to proceed without prepayment of fees. (*See* D.I. 4) Presently before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 23) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant the motion. Plaintiff will be given leave to file an amended complaint.

## II. BACKGROUND

The court screened the case and dismissed all claims against the Delaware Board of Parole and all claims against defendants in their official capacities seeking monetary damages. (*See* D.I. 6) Count one of the complaint alleges that from November 2, 1962 through November 18, 2008, Delaware Board of Parole ("Parole Board") members, defendants William C. Pfeifer ("Pfeifer"), James C. Justice ("Justice"), George W. Williamson, III ("Williamson"), and Joe F. Garcia ("Garcia") (collectively "Parole Board members"), in concert with Delaware Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg"), VCC Warden Perry Phelps ("Phelps"), and VCC treatment administrator Ronald Hosterman ("Hosterman") ("collectively DOC defendants"), failed to follow proper procedures, sentencing laws, administrative regulations, and policies and procedures in connection with parole denials, all in violation of plaintiff's constitutional right to due process and ex post facto requirements. Count two of the complaint alleges that plaintiff's family members and community supporters are denied an opportunity to present and speak on his behalf at parole

hearings in violation of his right to due process. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants move for dismissal on the grounds that: (1) the complaint fails to allege personal involvement of DOC defendants necessary for § 1983; and (2) the Parole Board members have quasi-judicial immunity.

## IV. DISCUSSION

### A. Personal Involvement/Respondeat Superior

DOC defendants move for dismissal of the claims against them on the grounds that the complaint fails to plead sufficient factual matter to show that they violated plaintiff's constitutional rights. In addition, they argue that the claims are raised against them on the basis of vicarious liability.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of

3

personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and that, in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Iqbal*, 129 S.Ct. at 1948-49); *Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal* 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained

4

a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for

the violation of a plaintiff's constitutional right.[1] *Williams v. Lackawanna Cnty. Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal,* 129 S.Ct. at 1949-54; *City of Canton v. Harris,* 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240 (3d Cir. 2005) (not published).

Plaintiff provides no specific facts as to how or when DOC defendants violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. The allegations in the complaint do not satisfy the *Iqbal* pleading requirements. Plaintiff, however, provides additional facts in his opposition to the motion to dismiss and asks the court for leave to amend.

---

[1] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

For the above reasons, the court will grant DOC defendants' motion for dismiss. Plaintiff, however, will be given leave to amend his claims against DOC defendants.

## B. Quasi-Judicial Immunity

The Parole Board members move for dismissal of the claims against them on the grounds that they have absolute immunity on the basis of quasi-judicial immunity. The complaint contains two claims against the Parole Board members: they failed to follow proper procedure in connection with parole denials and they did not allow plaintiff's supporters an opportunity to speak on his behalf at parole hearings.

Initially, the court notes that an inmate has no constitutional right to parole. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("A state may . . . establish a parole system, but it has no duty to do so."); *see also Eskridge v. Casson*, 471 F.Supp. 98, 101 (D. Del. 1979) ("[N]o prisoner can legitimately claim that the Delaware Parole Statute confers . . . a legally enforceable right to be paroled."). "[O]nce a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Hence, plaintiff has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn*, 975 F.Supp. 761, 764-65 (E.D. Pa. 1997), *aff'd*, 151 F.3d 1025 (3d Cir. 1998); *accord Bermudez v. Duenas*, 936 F.2d 1064, 1069 (9th Cir. 1991) (recognizing that "early release statutes can create 'a liberty interest protected by due process guarantees.' ") (quoting *Greenholtz*, 442 U.S. at 12).

The key consideration in determining whether Parole Board defendants are immune from suit is whether their actions occurred when they were "engaged in

adjudicatory duties." *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir.1986). To the extent plaintiff raises claims against the Parole Board members for their adjudicatory actions, they are entitled to absolute, quasi-judicial immunity. *See Harper*, 808 F.2d at 285; *Thompson v. Burke*, 556 F.2d 231, 236 (3d Cir. 1977).

It is evident from the complaint's allegations that the acts complained of are adjudicatory functions. For example, plaintiff alleges that he was denied parole and that certain individuals were not allowed to speak at his hearings, all adjudicatory functions. Finally, to the extent that the complaint can be read to include claims against the Parole Board members in their individual capacities, because they are entitled to quasi-judicial immunity, they are not subject to suit for injunctive relief. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).

For the above reasons, the court will grant the motion to dismiss the claims against the Parole Board defendants.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motion to dismiss. (D.I. 23) Plaintiff will be given leave to file an amended complaint as to the claims raised against the DOC defendants.

An appropriate order will be entered.