## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| MU'MIN RAHIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-551-SLR |
| | ) |
| COMMISSIONER CARL DANBERG, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Mu'min Rahim, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Commissioner Carl Danberg, Warden Perry Phelps, and Ronald Hosterman.

**MEMORANDUM OPINION**

Dated: June 19, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Mu'min Rahim ("plaintiff"), an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983[1] alleging deprivation of his right to due process in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff proceeds pro se and was granted leave to proceed without prepayment of fees. (See D.I. 4) Presently before the court are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment. (D.I. 48, 63) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant defendants' motion and will strike plaintiff's motion as untimely.

## II. BACKGROUND

The amended complaint (D.I. 36) alleges that plaintiff was denied parole for arbitrary and constitutionally impermissible reasons and that defendants Carl Danberg ("Danberg"), Perry Phelps ("Phelps"), and Ronald Hosterman ("Hosterman") violated plaintiff's right to due process under the Fourteenth Amendment. Count one alleges that defendants, in concert with Board of Parole members,[2] unlawfully applied new and harsher sentencing laws and other arbitrary Delaware Department of Correction ("DOC") administrative regulations, policies, and procedures, all to plaintiff's detriment.

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[2]All claims against the Board of Parole members have been dismissed. (See D.I. 34)

Count two alleges that defendants denied plaintiff's family members and community supporters an opportunity to attend parole board hearings and speak on his behalf.

Defendants answered the complaint and, on July 23, 2012, the court entered a scheduling order that set a discovery deadline of November 23, 2012 and a summary judgment deadline of January 7, 2013. (D.I. 47) Defendants filed their motion for summary judgment on September 18, 2012, and plaintiff filed a combined objection to defendants' renewed motion for summary judgment and cross-motion for summary judgment on February 25, 2013. (D.I. 48, 63) The court will strike the cross-motion for summary judgment as it was not timely filed and will deny as moot the motion to strike as plaintiff has misconstrued defendants' reply.

In 1962, plaintiff was convicted of second degree murder, incarcerated, and paroled in 1972. In 1975, following a parole violation and a second conviction of second degree murder, plaintiff was again incarcerated. Plaintiff is serving a life sentence and has been imprisoned for thirty-six years. He has unsuccessfully applied for parole ten or eleven times. When plaintiff was deposed on November 21, 2012, his most recent application for parole had been pending for approximately one month, but a hearing had not yet been scheduled. The Board of Parole has denied each of plaintiff's applications for parole. (D.I. 62, ex. A, 5-9, 12, 22)

Plaintiff claims that parole should be based on the old laws and not under any news law, SENTAC (i.e., Sentencing Accountability Commission) or TIS (i.e., truth in sentencing) guidelines. He asserts that the point system applied to him pre-parole is based on TIS and SENTAC and is not the system that should be applied for consideration of his parole. Plaintiff contends that incorrect criteria is used in the parole

2

process. According to plaintiff, because Danberg, Phelps, and Hosterman have supervisory positions and are part of the system that includes the Board of Parole, they are part and parcel of whatever happens to plaintiff.[3] Plaintiff acknowledges that Danberg and Phelps do not have authority over the Board of Parole. Nor has plaintiff been prevented from appearing before the Board of Parole. (*Id.* at 5, 11-13, 20-21)

When plaintiff was denied parole on March 24, 1988, the factors considered by the Board of Parole included: (1) not recommended for parole by institution; (2) extremely serious, repetitive nature of offense; (3) prior failure under parole supervision; (4) lengthy arrest record; (5) history of drug use (6) history of excessive drinking; and (7) not enough time served in relationship to sentence/offenses. (D.I. 49, ex. A) On March 7, 1991, plaintiff had a parole risk assessment rate of thirty-one. A score of twenty or more is "high risk."

The Multi-Disciplinary Team ("MDT") has voted in favor of recommending plaintiff's parole on numerous occasions beginning on May 22, 1991 and, thereafter, on July 6, 1993, November 9, 1995, August 20, 1997, December 22, 1999, December 12, 2001, August 25, 2004, June 20, 2005, and August 6, 2008. The most recent denial of parole was based upon: (1) violent nature of offense; (2) significant criminal history; (3) victim impact; and (4) prior failure parole/probation. Plaintiff acknowledged that he does not know of anything that defendants can do with regard to the Board of Parole denying him parole. (D.I. 51, ex. B; D.I. 55, D1, D68; D.I. 62, ex. A, 21)

---

[3]Plaintiff has never met with Hosterman regarding parole

3

Defendants move for summary judgment on the grounds that plaintiff's denial of parole had nothing to do with DOC policies and that plaintiff's constitutional rights have not been affected. (D.I. 49)

## III. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*,

4

477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## IV. ANALYSIS

### A. Due Process

Plaintiff alleges that various DOC pre-parole and classification policies are harsher and are the proximate cause of his unfair treatment during the parole process. "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, __U.S.__, 131 S.Ct. 859, 862 (2011). *See also Eskridge v. Casson*, 471 F. Supp. 98, 101 (D. Del. 1979) ("[N]o prisoner can legitimately claim that the Delaware Parole Statute confers . . . a legally enforceable right to be paroled."). The mere existence of a parole system does not create a liberty interest protected by the Due Process Clause. *See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 4 (1979).

"[O]nce a state institutes a parole system, all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Hence, plaintiff has a substantive due process right in being treated fairly during the parole process. *See Jubilee v. Horn*, 975 F.Supp. 761, 764-65 (E.D. Pa. 1997), *aff'd,*151 F.3d 1025 (3d Cir. 1998).

5

Delaware's parole statute authorizes the Board of Parole to reduce a prisoner's minimum term of parole eligibility "when the Board is satisfied that the best interests of the public and the welfare of the person will be served by such reduction." 11 Del. C. § 4346(b). Hence, the Board of Parole has broad discretion in granting or denying parole. Plaintiff has, at most, an expectation that he may at some time be released on parole if the Board of Parole determines that his release is in the best interests of society, as well as in his best interests. *See Bruton v. Minor*, 568 F. Supp. 2d 480, 486 (D. Del. 2008).

Assuming arguendo that the State of Delaware has created a liberty interest in parole, the Due Process clause requires that fair procedures be followed. *Swarthout*, 131 S.Ct. at 862. However, in the context of parole, the United States Supreme Court has held that the procedures required are "minimal." *Id.* An inmate must simply be given an "opportunity to be heard and [be] provided a statement of the reasons why parole was denied." *Id.* It is clear from the evidence of record that plaintiff has been afforded an opportunity to be heard as he has appeared before the Parole Board on numerous occasions. Moreover, upon denial of parole, the Board of Parole provided plaintiff with the reasons for denial. Thus, the elements of Due Process have been satisfied and plaintiff's procedural due process rights were not violated to the extent that family members and other individuals were not allowed to attend and participate in the parole hearings.

Finally, it is evident from the evidence of record that the Board of Parole did not rely upon DOC policies in denying plaintiff parole. Prison officials have recommended plaintiff's parole since May 1991. In its numerous denials, the Board of Parole states its

6

reasons for denying parole and notes when the institution did "not recommend parole" (*see e.g.*, the March 24, 1988 denial). It is clear by the omission of reference to the institution's parole recommendations by the Board of Parole in its denials from May 1991 to the present, that the Board of Parole did not consider, or rely upon, the recommendations that plaintiff be paroled. Finally, as plaintiff conceded in his deposition, he does not know of anything that defendants could do with regard to the Board of Parole denying him parole.

After reviewing the record, the court finds that no jury could reasonably find for plaintiff on his Fourteenth Amendment claims or find a violation of plaintiff's constitutional rights. Therefore, the court will grant the defendants' motion for summary judgment.

## B. Ex Post Facto Clause

Plaintiff claims that the Ex Post Facto Clause is implicated because the State of Delaware has abolished parole and the time that an inmate must serve is dictated by statute or decided by the court. The Ex Post Facto Clause precludes a statutory or policy change that alters the definition of a crime or increases the punishment for a given crime. *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995); *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010). It is "clear from the Supreme Court cases that have reviewed legislative changes affecting parole decisions that, to demonstrate an ex post facto claim, a plaintiff must show that the effect of a retroactive change in the law or policy created a 'significant risk' that the sentence ultimately served will be increased above and beyond what was prescribed when the crime was consummated, as a result of the new law. Allegations that changes in the law have

7

produced 'some ambiguous sort of "disadvantage," [or] . . . affect[ed] a prisoner's "opportunity to take advantage of provisions for early release,"' are not sufficient grounds for bringing an ex post factor claim. *Morales*, 514 U.S. at 506 n.3 (citations omitted). *See also Pennsylvania Prison Soc'y v. Cortes*, 622 F.3d 215, 238-39 (3d Cir. 2010). "[T]here is no ex post facto violation where the retroactively applied law does not make one's punishment more burdensome, but merely creates a disadvantage." *Spuck v. Ridge*, 347 F. App'x 727, 729 (3d Cir. 2009).

Here, there is no evidence of record that any change in Delaware's law has created a significant risk that the sentence plaintiff will serve will be increased beyond the length of time plaintiff was sentenced to serve. Even construing the facts in the light most favorable to plaintiff, his ex post facto claim fails as a matter of law.[4] Accordingly, the court will grant defendants' summary judgment motion on this claim.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motion for summary judgment, will deny as moot plaintiff's objection to defendants' renewed motion for summary judgment, and will strike as untimely plaintiff's cross-motion for summary judgment.

An appropriate order will be entered.

---

[4]To extent that the § 1983 claim is connected to plaintiff's denials of parole prior to June 2008, said denials are barred by the applicable two year statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 275 (1983); 10 Del. C. § 8119.

8